## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MONA AHMED,

     Plaintiff,

     v.

THE MEADOWS AT STROUD FOR
NURSING AND
REHABILITATION, LLC,

     Defendant.

CIVIL ACTION NO. 3:24-cv-704

(SAPORITO, J.)

## MEMORANDUM

On April 24, 2024, the plaintiff filed this action against The Meadows at Stroud for Nursing and Rehabilitation, LLC, ("The Meadows") for alleged disability discrimination that she suffered while employed by the entity. (Doc. 1). She brings the following claims: (1) discrimination on the basis of a perceived disability under the Americans with Disabilities Act ("ADA"); (2) discrimination on the basis of a perceived disability under the Pennsylvania Human Relations Act ("PHRA"); (3) discrimination on the basis of a disability under the ADA; (4) discrimination on the basis of a disability under the PHRA; (5) retaliation under the ADA; (6) retaliation under the PHRA; and (7) failure to accommodate under the ADA. (*Id.*). On January 16, 2026, The

Meadows filed a motion for summary judgment to dismiss the plaintiff's claims in their entirety. (Doc. 31). The motion has been briefed by both parties (Doc. 31; Doc. 40; Doc. 48) and it is now ripe for review.

## I.    Background[1]

In 2016, the plaintiff began working as a licensed practical nurse ("LPN") at a skilled nursing facility operated by a company known as Golden Living. In early 2017, The Meadows became the operator of the nursing facility. As a LPN under the supervision of The Meadows, the plaintiff's job duties included: (1) providing nursing care; (2) coordinating, assisting, and preparing for new admissions, transfers, and discharge of residents; (3) preparing and administering medications; and (4) making rounds with physicians. The plaintiff's duties also included, among others, administering professional services such as catheterization, tube feedings, applying and changing dressings, and taking blood.

On October 24, 2019, the plaintiff suffered an injury at work while attempting to move a patient who fell in between two beds. The plaintiff

---

[1] Unless otherwise noted, the facts are taken from The Meadows "Statement of Undisputed Facts" (Doc. 31) and admitted by the plaintiff. (Doc. 40).

struck her back against the metal frame of a hospital bed and fell onto her knee, sustaining an injury. Nonetheless, despite her injury, the plaintiff continued to work full time without any modifications until October 2020, when her physician recommended that she take off work in preparation for scheduled surgery in January 2021. From October 2020 to August 2021, the plaintiff remained out of work while recovering from her surgery before returning to work at The Meadows. However, while the parties both agree the plaintiff returned to work in August 2021, they offer significantly different accounts of the events following her return.

The Meadows argues that the plaintiff returned to work in a position that largely comports with a job description for a "Temporary nurse manager Covid 19 reporting" as her injury necessitated a light duty position. (Doc. 31, ¶¶ 10, 13). The job consisted of the following job duties: (1) performing audits for the nursing department; (2) checking inventory of items needed for the nursing department; (3) helping with the discharge of paperwork for residents; and (4) testing residents for COVID-19. (Doc. 31, ¶ 13). After the plaintiff continued to work in the light duty position, on April 29, 2022, the plaintiff's physician

reexamined her and determined that she had permanent lifting restrictions of ten (10) pounds, and occasionally twenty (20) pounds. (*Id.*, ¶ 25). The Meadows contends that when it learned that the plaintiff's restrictions were permanent rather than temporary, it could not continue to employ the plaintiff because her temporary position existed solely due to the COVID-19 pandemic and was being phased out as the pandemic drew to a close. (*Id.*, ¶ 26). Therefore, on June 17, 2022, The Meadows informed the plaintiff that it was removing her from the schedule, despite the plaintiff's request that her position become permanent. (*Id.*, ¶ 27).

The plaintiff contends that when she returned to work, she was placed in a new position as a nurse manager due to the limitations of her injury. (Doc. 40, ¶ 8). According to the plaintiff, the position was permanent and accommodated all her physical restrictions. (*Id.*, ¶ 9). She argues that she adequately performed all the essential functions of her job until June 2022, when she was terminated by The Meadows because her temporary knee restrictions became permanent. (*Id.*, ¶¶ 10–12). Moreover, the plaintiff argues that while The Meadows claimed it terminated her on the grounds that it could not accommodate her permanent restrictions, her former position remains open and available

- 4 -

at the defendant's facility. (*Id.*, ¶ 12). Therefore, despite her excellent employee performance, the plaintiff contends that her termination was without cause or justification and must have been because of her permanent restrictions. (*Id.*, ¶¶ 13,17).

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and

demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.  Discussion

As noted above, the plaintiff brings the following claims: (1) discrimination on the basis of a perceived disability under the Americans with Disabilities Act ("ADA"); (2) discrimination on the basis of a perceived disability under the Pennsylvania Human Relations Act ("PHRA"); (3) discrimination on the basis of a disability under the ADA; (4) discrimination on the basis of a disability under the PHRA; (5) retaliation under the ADA; (6) retaliation under the PHRA; and (7) failure to accommodate under the ADA. (*Id.*). We shall analyze each claim individually.

### A. Discrimination Under the ADA and the PHRA

While the plaintiff brings disability discrimination and perceived discrimination claims under both the ADA and PHRA, "our analysis of

an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996)). Claims under the ADA and the PHRA are analyzed under the same burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See generally Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 979 n.1 (3d Cir. 1998) ("[A] claim under the PHRA is coextensive with a claim under the ADA."). This framework applies to claims of discrimination. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (discrimination). As summarized by the Supreme Court, under *McDonnell Douglas*:

> [A] plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citations omitted).

Under the first step of *McDonnell Douglas*, to establish a prima facie case of discrimination under the ADA and the PHRA, a plaintiff must establish that: (1) he was disabled; (2) he was otherwise qualified

for the position at issue, with or without reasonable accommodation; (3) he was subject to an adverse employment action; and (4) the adverse employment action was because of his disability. *See Fowler*, 19 F.4th at 299; *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). The ADA defines a "disability" as "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The plaintiff brings her claims on the basis that she both had a "physical or mental impairment that substantially limits one or more major life activities of such individual" (Counts III and IV) and was "regarding as having such an impairment" (Count I and II).

The Meadows has moved for summary judgment on the same basis concerning the plaintiff's disability discrimination and perceived disability discrimination claims. It contends that under the second element of *McDonnell Douglas*, the plaintiff was not qualified for the licensed practical nurse supervisor position she sought after her temporary position expired because the position required her to lift forty-five (45) pounds, which she was unable to do. (Doc. 31, at 25). But as we

noted above, the plaintiff's perspective on her job situation differs significantly from The Meadows. The plaintiff does not contend, as The Meadows argues, that she sought a licensed practical nurse supervisor position after her temporary COVID-19 position expired. Rather, she argues that she returned to work in a permanent position "working as Nurse Manager with a set of different responsibilities and set of functions, which she was able to perform at all times." (Doc. 40, at 13). Moreover, she contends that the forty-five (45) pound requirement for the licensed practical nurse supervisor position did not apply to her because she held an entirely different position. *See* (*Id.*, at 14) ("Pushing a cart is simply not an essential duty of the job. However, [the defendant] eliminated the need to argue that point because [it] put her in the new job which she said she had no problem performing."). Accordingly, the parties' differing interpretations of the plaintiff's positions, and, by extension, the qualifications required to perform their duties, create a genuine dispute of material fact that precludes summary judgment.

The Meadows also moves for summary judgment on the plaintiff's disability and perceived disability claims under the third step of *McDonnell Douglas*, which requires a plaintiff to:

> identify[] evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons [for the plaintiff's termination]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. A plaintiff must do more than simply claim a decision was wrong or mistaken to discredit a proffered justification. The plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Duran v. Cnty. of Clinton*, 380 F. Supp. 3d 440, 452 (M.D. Pa. 2019) (citations, internal quotations marks, and brackets omitted).

Here, The Meadows argues that, after the plaintiff's temporary COVID-19 position was no longer needed, it had no available light duty position that could accommodate the plaintiff's permanent restrictions and, as a result, removed her from the schedule. The plaintiff therefore bears the burden to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] proffered legitimate reasons that a reasonable factfinder could rationally find them unworthy of credence." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 310 (3d Cir. 2012) (quoting *Fuentes v. Perskie*, 32 F.3d

759, 764 (3d Cir. 1994)). We find that she has done so here.

The plaintiff's assertions directly contradict The Meadows' reasoning for removing her from the schedule. The plaintiff argues that she was already working in a light duty position that accommodated her restrictions and that the position remained open and advertised for more than a year after she was removed from it. (Doc. 40, at 17). Moreover, the plaintiff has introduced evidence that she was "treated with disdain and ridiculed from May 2022 until her termination on June 17, 2022[,] because of Plaintiff's permanent disability." (*Id.*, ¶ 17); *see* (*Id.*, ¶ 15) ("Plaintiff was labeled a 'liability' and treated with antagonism by her supervisors … after Dr. Auerbach determined that Plaintiff's disability and restrictions would be permanent."); (*Id.*, ¶ 16) ("Plaintiff was subjected to antagonism by [her fellow employees] … When the Plaintiff returned to work the Defendant's Administrator told her that, 'she was lucky that she was not out in the streets.'"). Therefore, we find that the plaintiff has satisfied her burden in providing enough evidence that a reasonable factfinder could rationally find The Meadows' explanation for her removal to be unworthy of credence. The Meadows' motion for summary judgment as to the plaintiff's disability discrimination claims

and the plaintiff's perceived disability discrimination claims will be denied.[2]

### B. Retaliation under the PHRA and ADA

The plaintiff's retaliation claim is also analyzed under the *McDonnell Douglas* framework. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). But prior to analyzing the merits of the plaintiff's retaliation claim, we must first address The Meadows' contention that the plaintiff failed to exhaust her administrative remedies for her claim. (Doc. 31, at 13). "As a precondition for filing suit under … the ADA and the PHRA, a plaintiff must exhaust a claim by presenting it in an administrative charge to the [U.S. Equal Employment Opportunity Commission ("EEOC")] and the [Pennsylvania Human Rights Commission ("PHRC")]." *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 601 (E.D. Pa. 2015). An employee is not permitted to bypass the administrative process. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). The "fundamental aim of the pre-suit requirements is to 'give

---

[2] The Meadows also argued that because it conceded that the plaintiff had an actual disability under the ADA, her claims for discrimination based on a perceived disability should be dismissed as duplicative. (Doc. 31, at 28). The Meadows, however, failed to provide legal support for its contention.

prompt notice to the employer' and 'encourage the prompt processing of all charges of employment discrimination.'" *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121 (2002)).

"The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon PA, Inc.*, 361 Fed. App'x 411, 413–14 (3d Cir. 2010). "A claim has been administratively exhausted when the specifics of a charge with the administrative agency 'fairly encompass a claim' and would put the agency and the defendant employer 'on notice' of that claim." *Ford-Greene*, 106 F. Supp. 3d at 600-01 (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). The "relevant test" in the Third Circuit for exhaustion of administrative remedies is "whether the acts alleged in the subsequent … suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *see also Simko*, 992 F.3d at 207 (quoting *Waiters*, 729 F.2d at 237); *Hewitt v. BS Transp. of Ill., L.L.C.*, 355 F. Supp. 3d 227, 235 (E.D. Pa. 2019). This determination "turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial

complaint may fairly be considered explanations of the original charge or growing out of it." *Hewitt*, 355 F. Supp. 3d at 235 (quoting *Yang v. Astrazeneca*, No. 04-4626, 2005 WL 327539, at *3 (E.D. Pa. Feb. 10, 2005)).

The Meadows argues that the plaintiff failed to exhaust her administrative remedies for her retaliation claim because her complaint with the PHRC only alleged discrimination based on disability and perceived disability; it did not allege retaliation. (Doc. 31, at 4–6) (citing (Doc. 31) at 15)). Therefore, The Meadows contends that the plaintiff's PHRC complaint provided notice only of her discrimination claims, not her retaliation claims. (*Id.*).

To plead a prima facie case of retaliation, a plaintiff must first show that she engaged in a "protected employee activity." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015). Here, the plaintiff alleges that she engaged in protected activity by requesting a light duty accommodation after her physician determined that her temporary restrictions had become permanent and by filing a grievance regarding another employee's threatening behavior towards her. (Doc. 40, at 12–13). But these allegations are noticeably absent from the plaintiff's

PHRC complaint. *See* (Doc. 31-17). The plaintiff's PHRC complaint fails to mention either a request of a light duty restriction or the filing of a grievance that serves as the basis of the plaintiff's retaliation claim. Indeed, the plaintiff makes no mention of the word "retaliation" throughout the complaint, only "discrimination." *See* (*Id.*, at 2,3) (labelling her only count as "DISCRIMINATION-Based on Disability"); *see also* (*Id.*, ¶¶ 19, 22) ("I have been discriminated against as a result of my disability…" and "The discrimination was severe and pervasive…"). Put differently, although the plaintiff could have filed a retaliation charge with the PHRC, she chose not to do so and likewise failed to allege any retaliatory conduct that would have placed the agency on notice of a retaliation claim. The plaintiff's retaliation claims are therefore outside the scope of the initial administrative charge and thus not properly exhausted. We will grant The Meadows' motion for summary subject as to the plaintiff's retaliation claims.

### C. Failure to Accommodate

A plaintiff bringing a failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith

- 16 -

effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC,* 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). The Meadows does not dispute the first two elements of the plaintiff's claim. Instead, it moves for summary judgment on the third and fourth elements, arguing that the plaintiff has failed to establish either that The Meadows did not make a good-faith effort to accommodate her or that she could have been reasonably accommodated. (Doc. 31, at 33). But as we noted above, the parties' differing interpretations of the events underlying this action create a genuine dispute of material fact, thereby precluding summary judgment.

The Meadows argues that the record demonstrates that it made a good-faith effort to accommodate the plaintiff by allowing her to work in a light duty position for nearly a year. (Doc. 31, at 34). It further argues that it removed the plaintiff from the position only after her temporary assignment came to an end due to the lessening of COVID-19 restrictions and no other positions were available that could accommodate her permanent restrictions. (*Id.*). However, the plaintiff contends that her successful placement in the temporary nurse manager position for the

- 17 -

preceding year, during which she alleges she performed her duties without issue, demonstrates that The Meadows was capable of accommodating her but chose not to do so when it terminated her employment in that position. (Doc. 40, at 15). These conflicting accounts create a genuine dispute of material fact that is more appropriately resolved by a jury than by the court. Therefore, The Meadows' motion for summary judgment as to the plaintiff's failure-to-accommodate claim will be denied.

## IV.   Conclusion

For the foregoing reasons, The Meadows' motion for summary judgment will be granted in part and denied in part. The motion will be granted as to the plaintiff's retaliation claims. The motion will be denied as to the plaintiff's disability discrimination claims, perceived disability discrimination claims, and failure-to-accommodate claim.

An appropriate order follows.


Dated: June 4, 2026                    *s/Joseph F. Saporito, Jr.*
                                       JOSEPH F. SAPORITO, JR.
                                       United States District Judge